UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DARLENE B.,[1]

Plaintiff

-vs-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

DECISION and ORDER

1:24-CV-00775 CJS

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff's application for Social Security Disability Insurance ("DIB") benefits. Now before the Court is Plaintiff's motion for judgment on the pleadings (ECF No. 8) and Defendant's cross-motion for the same relief (ECF No. 12). For reasons discussed below, Plaintiff's application is denied and Defendant's application is granted.

## STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

> Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment]. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim. In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West). Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773. Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec*., No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing

of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action. Briefly, Plaintiff applied for DIB benefits claiming that she became disabled on June 23, 2018, due to impairments including "lumbar straightening and degeneration, status-post microdiscectomy," ulcerative colitis, and cervical spine pain. Plaintiff is seeking a closed period of disability, between June 23, 2018 and August 1, 2019. After August 2019, Plaintiff returned to substantial gainful employment.

On December 13, 2018, the Commissioner had Plaintiff undergo a consultative

internal medicine examination by Nikita Dave, M.D. ("Dave"). Plaintiff's chief complaint to Dave was neck pain, which she stated was intermittent and caused by things such as her dog pulling on its leash or lifting heavy laundry. Tr. 798. Plaintiff also related that she had ulcerative colitis, and had been having a flare for several months, since July 2018. Dave's examination of Plaintiff was unremarkable, except for muscle spasm in the neck. Tr. 800 ("Spasm in the bilateral cervical paraspinals, no tenderness."). Dave's medical source statement was, "Moderate limitations for lifting, carrying, pushing, and pulling, repetitive bending and twisting through the cervical spine, or maintaining a non-neutral cervical spine position for prolonged periods of time. May require frequent restroom intervals at this time due to ulcerative colitis and may benefit from avoidance of heavy lifting as well. These restrictions may also pertain to the lumbar spine." Tr. 801.

The Commissioner denied Plaintiff's claim initially and on reconsideration. In connection with the initial denial, on December 26, 2018, agency review physician D. Miller, D.O. ("Miller"), reviewed the medical record and found that Plaintiff's spinal problems and ulcerative colitis were "severe," but that Plaintiff could nevertheless perform light work, since she could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk for 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday, with occasional stooping. Tr. 82. Miller further opined that Plaintiff could perform her past work as a medical secretary and food service worker. Tr. 83. In connection with the reconsideration denial, on April 29, 2019, agency review physician C. Krist, D.O. ("Krist"), similarly reviewed the medical record and reached the same conclusions as Miller, regarding Plaintiff's RFC and ability to perform past work.

Thereafter, two different ALJs, Seth Grossman and William Weir, conducted hearings and rendered decisions, both of which were vacated and remanded by the Appeals Council.

At the second hearing, held on July 12, 2021, before ALJ Weir, Plaintiff testified concerning her employment history and medical conditions. Plaintiff indicated that she worked as a medical secretary between 1996 and 2015, which work was performed all while sitting. Tr. 313-314. Plaintiff stated that she left that job because she was "ready to go to a part-time type of work," since her "ulcerative colitis was starting," and since the sitting was "starting to aggravate" her lower back pain. Tr. 314-315. Plaintiff emphasized, however, that her medical conditions were not the only reason that she left the secretarial job, and, indeed, that her "medical issues came about after that, more so." Tr. 315. Plaintiff stated that after leaving the secretarial position she had lower-back surgery for herniated discs and then needed some time to recuperate. Tr. 315.

In 2015, Plaintiff began working in a school district in the cafeteria, where she remained until her alleged disability onset date in June 2018. Tr. 315. Plaintiff stated that her "neck issue really started" while working the cafeteria, due to lifting. Tr. 316 ("[I]t was lifting, you know, cartons of milk occasionally, and it just got to be too much. I couldn't do it."). In particular, Plaintiff attributed her neck pain to cervical degenerative disc disease resulting in a "pinched nerve." Tr. 316. Plaintiff testified that her neck pain was a significant reason, if not "entirely the reason," that she could not work during the requested closed period of disability:

> [Attorney:] [D]o you feel that the pain from the neck was one of the reasons you stayed off of work from June of 2018 until August of '19?

> [Plaintiff:] That was entirely the reason. That and the – well, I shouldn't say entirely. And I had the ulcerative colitis at the time.

Tr. 316-317. Plaintiff testified that she had "constant" neck pain during the entire period of alleged disability, "every time [she] tried to do anything." Tr. 317. Plaintiff indicated that she was unable to sit and look down for more than fifteen minutes at a time due to the neck pain. Tr. 318. Plaintiff opined that she would not be able to perform her past secretarial work due to her neck pain. Tr. 319.

Regarding her ulcerative colitis, Plaintiff indicated that she had a "flare" of ulcerative colitis beginning in or about June 2018, which, along with her neck pain, made her "more or less" bedridden during the summer of 2018, and required her to spend approximately two hours per day total in the bathroom. Tr. 320-322. Plaintiff initially testified that her ulcerative colitis improved with taking Prednisone, but nevertheless continued throughout the period of alleged disability, June 2018 through August 2019. Tr. 323-324. Plaintiff indicated that during that period she was able to work part-time as a teacher's aide, but had the ability to decline work on particular days when she was not feeling well. Tr. 323-324. Plaintiff estimated that the ulcerative colitis flare that began in or about June 2018 resolved and went into "remission" in about June 2019. Tr. 324 ("I would say over the next September through June I gradually, little by little, I got my strength. My condition went into remission."). Plaintiff nevertheless testified that despite her improvement from taking Prednisone, during the entire period of alleged disability she needed to recline "two hours a day" and also spend "two hours a day in the bathroom." Tr. 325.

Significantly, however, ALJ Weir then asked Plaintiff about records from her treating

gastroenterologist, purporting to show that Plaintiff's ulcerative colitis flare had actually resolved by December 2018. Tr. 326-329. In particular, the ALJ directed Plaintiff's attention to notes from an office visit on December 17, 2018, at which Plaintiff reported that she had improved such that she was only "moving her bowels once daily," without bloating or abdominal pain. Tr. 835. Plaintiff, who at that visit reportedly appeared to be healthy and in no acute distress, further reported having "good energy" and denied having any other symptoms, including any "arthalgias [(joint pain)] and myalgias [(muscle pain)]." Tr. 831, 835.[6] Upon having her recollection refreshed with this record, Plaintiff agreed that the December 2018 treatment note was accurate, and that by that time she was "much better." Tr. 328. ("Yes, that is correct. I was much better at that time.").

The ALJ pointed out to counsel it appeared that the ulcerative colitis condition would not meet the durational requirement, unless there was some further evidence showing that, between December 2018 and August 2019, Plaintiff's ulcerative colitis worsened. Tr. 328-329 ("[THE ALJ:] So Counsel, this question for you. Is there any evidence of any functional impact of bowel disorder after December of 2018? . . . I'm looking at after 12/17/18. Because if we don't have anything after 12/17/18 . . . we don't have duration on this condition."). Counsel responded that Plaintiff's testimony had been that she was still spending hours in the bathroom with many bowel movements throughout the entire period of alleged disability, Tr. 329, but the ALJ responded that the medical evidence "doesn't support that testimony," and that if Plaintiff were continuing to have symptoms to that degree he "would expect to see medical notation of that." Tr. 329. Plaintiff's counsel could find no

[6] The gastroenterologist consequently discontinued Prednisone. Tr. 837.

such evidence, and, upon further questioning, Plaintiff revised her earlier testimony, testifying that between December 2018 to August 2019, she continued to improve and spent perhaps 30 minutes total in the bathroom. Tr. 331 ("From December to August? I'm going to say half an hour during that time. I was much better, yes. Prednisone did the job. That's what put me into remission."). Additionally, Plaintiff's counsel acknowledged that the only additional record during the relevant period was a gastroenterologist's note in August 2019 reporting that Plaintiff had no concerns at that time related to ulcerative colitis. Tr. 332.

The ALJ then also questioned Plaintiff about her neck pain, and Plaintiff indicated that her neck pain improved after she stopped working in the school cafeteria in June 2018. Tr. 333. Plaintiff testified that her neck pain "gradually got better," such that, to the extent that from September 2018 onward she was unable to work at her part-time job as a substitute teacher, it was probably because of her ulcerative colitis flare, which did not resolve until December 2018, as discussed earlier, as opposed to neck pain. Tr. 334. Plaintiff testified that, in general, she did not think she could perform full-time work any longer due to her neck and back problems, but did not identify any particular instance in which she experienced neck symptoms that restricted her from working during the alleged period of disability. Tr. 334-335.

The ALJ later issued a decision finding Plaintiff not disabled, but, again, the Appeals Council remanded the matter for new hearing, since the ALJ had neglected to administer the oath to the Vocational Expert ("VE") who had testified at the hearing. Tr. 49.

On July 3, 2023, ALJ Weir held a third hearing, at which Plaintiff did not offer any new records or testimony concerning her medical conditions. Tr. 69-70. A VE testified after

being duly sworn. On September 28, 2023, ALJ Weir issued a new decision denying Plaintiff's application. Tr. 49-60. Essentially, upon applying the five-step sequential evaluation discussed earlier, the ALJ found that, between the alleged disability onset date and the date of his decision, Plaintiff had only a single severe impairment that met the duration requirement, that is, an impairment that "can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months," namely, "lumbar straightening and degeneration, status-post microdiscectomy," which nevertheless did not prevent her from performing "the full range of sedentary work" on a sustained basis, such that she could perform her past work as a medical secretary.

As particularly relevant here, at step two, besides her lumbar spine condition, the ALJ found that Plaintiff had two other conditions,[7] ulcerative colitis and intermittent neck pain, neither of which was severe and/or met the 12-month duration requirement. More specifically, the ALJ found that any limitations from Plaintiff's ulcerative colitis were not severe and did not persist for at least 12 months during the relevant period in this action, and that Plaintiff's neck pain did not amount to a medically determinable impairment and was never severe during the relevant period in any event.

For example, in his discussion at step two of the sequential evaluation the ALJ stated, in pertinent part, the following concerning Plaintiff's ulcerative colitis condition:

> While longitudinal evidence does show a well-documented history of UC, the condition shows general resolution without complication, despite a multi-month flare. More specifically, although the claimant had a UC flare with increased bowel movement frequency, beginning in July 2018, gastroenterology treatment notes show it resolved by December 2018, with medication and low

[7] Plaintiff also claimed to suffer from cataracts, but that condition is not at issue in this action.

> fiber diet. . . . By the time the flare had resolved in December 2018, the claimant resumed attending annual wellness exams through 2019, revealing normal physical findings. . . . Longitudinal evidence reflects the claimant consistently presented in no acute distress, with normal abdominal findings and bowel sounds upon exam and even during her multi-month UC flare, the claimant's symptoms never reached such an extent that she sought or required any acute treatment. . . . As such, I must conclude the claimant's UC was not severe for a consecutive 12-month period and does not cause more than minimal limitation on her ability to perform basic work activities, during the relevant period.

Tr. 53 (citations to record omitted); *see also*, Tr. 56 ("[T]he claimant reported she was taken off Prednisone in late 2018 because it "did the job" and put her UC not remission. . . . I note lacking ongoing treatment for UC with objective findings supporting severe symptoms after December 2018 when her UC flare resolved."); Tr. 59 ("[T]he claimant's UC flare resolved in December 2018, after approximately seven months of Prednisone treatment[.]").

Similarly, concerning Plaintiff's neck pain, at step two the ALJ stated in pertinent part:

> While the claimant reported neck pain with shoulder involvement on July 10, 2018, with an onset of eight days prior, her physical examination merely revealed tenderness to palpation with some limited range of motion on movement. Nor is there imaging [on that occasion][8] supporting the diagnosis of other cervical disc degeneration, unspecified cervical region, which i[n] any event was treated conservatively, with the claimant [sic] was merely instructed to use cold packs, continue taking her steroid (as prescribed for her UC), and return for further evaluation or treatment with worsening. However, the claimant never returned for additional evaluation of neck pain or reported worsening of her symptoms. Rather, despite her testimony regarding neck pain, the claimant's treatment was generally focused on her UC, and she consistently denied bone or joint pain, and myalgias. Moreover, during a

[8] The record contains an x-ray, from a 2017 ER visit in which Plaintiff was complaining of neck pain that she attributed to spasms caused by her ulcerative colitis medication, showing degenerative disc disease in the cervical spine. See, Tr. 597 ("Patient states she recently started a medication for colitis and one of the side effects is neck spasm."); *see also*,Tr. 600 (Radiology report: "Impression: No evidence of fracture. Degenerative disc disease of the lower cervical spine. Right facet arthritis.").

> December 13, 2018, consultative examination[,] the claimant reported intermittent neck pain for 2 years aggravated with sudden movement or pulling/tugging type motions, abated with hot or cold packs, and medication. Yet, she explained she had not [pursued] treatment with a specialist, nor attempted physical therapy or chiropractic treatment. Thus, I must conclude the claimant's alleged intermittent neck pain is not a medically determinable [sic], or alternatively, because it would not impose more than minimal work-related limitations in functioning, it is not severe.

Tr. 53-54; *see also*, Tr. 56 ("She also explained that over the summer [of 2018] her spinal symptoms resolved with rest and not working in the school cafeteria[.]").

Regarding both the ulcerative colitis and neck pain, the ALJ summarized his discussion at step two by stating:

> Overall, the longitudinal evidence in the record indicates that the conditions listed in this discussion, other than the claimant's lumbar spine impairment . . . did not impose more than minimal limitations in the claimant's ability to engage in basic work activities; therefore, these conditions are not severe[.]

Tr. 54. The ALJ indicated, however, that he would consider the effects of all Plaintiff's impairments, "even those that are not severe," when determining Plaintiff's RFC. Tr. 54.

The ALJ further found, at step three, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Next, the ALJ found that Plaintiff had the RFC to perform the full range of sedentary work. In reaching that conclusion, the ALJ noted that he found Plaintiff's claim of complete disability during the relevant period to be inconsistent with both her reported activities of daily living and her ability to consistently maintain work at below-SGA levels throughout the period, except during summers when the school at which she worked was closed. Tr. 56. The ALJ also referenced the absence of any indication that Plaintiff's ulcerative colitis

interfered with her ability to perform such work. Tr. 56 ("[T]he earnings, while not disqualify SGA during the requested period of disability, are nonetheless evidence of her ability to sustain work and as such undercut any vision or GI claims she makes."). The ALJ further found that the objective medical evidence did not support the severity of her claimed limitations. *See, e.g.*, Tr. 57 ("Annual wellness exams in August 2018, 2019, and 2020, and again in dated [sic] 2021, are entirely devoid of complaints for spinal pain or myalgias, and merely list a history of lumbar microdiscectomy. In fact, in addition to denying significant abdominal pain, arthralgias,and myalgias amidst her colitis flare in August 2018, the claimant did not exhibit acute distress and ambulated with a normal gait . . . according to records from both primary care as well as WNY GI connection.").

Concerning the medical opinion evidence, the ALJ found Dr. Dave's consultative opinion partially persuasive, but not with regard to Dave's contention that Plaintiff needed additional restroom breaks or cervical spine restrictions. Tr. 58 ("I am not persuaded by the conclusory indication regarding restroom breaks related to the claimant's UC, because such limitation was rendered [in December 2018] as her flare resolved, and before the 12-month durational requirement could be established for a severe impairment. Likewise, I am not persuaded by the cervical spine restrictions, because they are entirely unsupported by a single complaint of neck pain with no follow-up treatment of any kind[.]"). The ALJ found that the opinions of agency review physicians Miller and Krist were somewhat persuasive insofar as they imposed limitations related to Plaintiff's lumbar spine, but unpersuasive insofar as they found Plaintiff's ulcerative colitis to be a severe impairment. Tr. 58 (Neither Miller nor Krist specifically indicated that Plaintiff's neck pain was a severe impairment.

Rather, they each generally indicated that Plaintiff had a “disorder of the back/discogenic and degenerative” condition that was severe.). The ALJ nevertheless made an RFC finding limiting Plaintiff to sedentary work that was more restrictive than those of Miller and Krist indicating that Plaintiff could perform light work, based primarily on Plaintiff’s lumbar spine condition. Tr. 57 (“Accordingly, the limitation to sedentary exertion fully accommodates Plaintiff’s lumbar spine impairment[.]”).

The ALJ also found that with the RFC to perform sedentary work, Plaintiff could perform her past work as a medical secretary and was therefore not disabled. Tr. 59-60.

On June 18, 2024, the Appeals Council declined to review the ALJ’s decision, thereby making that decision the Commissioner’s final decision.

On August 21, 2024, Plaintiff commenced this action. On January 31, 2025, Plaintiff filed the subject motion for judgment on the pleadings, contending that the Commissioner’s decision must be reversed for the following reasons: 1) the ALJ erred by acting as his own medical expert and by selectively relying on evidence when discounting Dr. Dave’s medical opinion concerning Plaintiff’s neck pain and ulcerative colitis; 2) the ALJ erred by failing to include any limitations from Plaintiff’s ulcerative colitis and neck pain in the RFC finding, such as, for example, failing to include a limitation that she avoid mentally-demanding and stressful work that exacerbated her symptoms; 3) the ALJ’s finding that Plaintiff could perform her past work as a medical secretary is unsupported by substantial evidence that she could perform such work on a regular and continuing basis; and 4) the Appeals Council gave the appearance of partiality by denying Plaintiff’s appeal shortly before a new regulation took effect that would have changed the outcome of her claim by restricting the

ALJ's consideration of her past work to a period of five years rather than fifteen years.

On March 26, 2025, the Commissioner filed the subject cross-motion for judgment on the pleadings (ECF No. 12). The Commissioner contends that Plaintiff's arguments lack merit primarily since neither the Plaintiff's ulcerative colitis nor her neck pain met the durational requirement, and therefore did not have to be accounted for in the RFC finding. The Commissioner further maintains that the ALJ's evaluation of the medical opinion evidence was free of legal error and supported by substantial evidence. Finally, the Commissioner asserts that Plaintiff's argument concerning the Appeals Council is also meritless, since she has provided no evidence of bias.

On April 3, 2026, the Clerk of the Court reassigned this action to the undersigned. The Court has considered the parties' submissions and the relevant sections of administrative record.

DISCUSSION

Plaintiff's Assertion of Bias by the Appeals Council

The Appeals Council declined to review the ALJ's decision, and Plaintiff asserts that such decision violated her right to due process, since it was "was contrary to the remedial nature of the Social Security Act and its nonadversarial administrative procedures," and "create[d] the appearance of [a] lack of impartiality" by the Appeals Council. ECF No. 8-1 at pp. 24, 26. In support of this assertion, Plaintiff states:

> On April 18, 2024, the Commissioner published a document labeled as a "final rule" which would take effect on June 8, 2024. 89 FR 27653, 2024 WL 1665873 at *27653 (R. 6). That rule would result in a favorable decision in this claim (R. 4). On June 6, 2024, the Commissioner published Social Security Ruling 24-2p, "SOCIAL SECURITY RULING, SSR 24-2P. TITLES II AND XVI: HOW WE

> EVALUATE PAST RELEVANT WORK", 89 FR 48479, 2024 WL 3291790, which postponed the effective date of the new rule from June 8, 2024 to June 22, 2024 for all claims pending on or after that date. 2024 WL 3291790 at *1, n. 1. SSA said they "expect" that courts would apply the rules in effect at the time they issued the decisions, but if a claim was remanded and a new determination was made the new rule would be applied to the entire period at issue. *Id*.
>
> SSR 24-2p contained no explanation for the two-week postponement but based upon the date that the Appeals Council acted upon the claim, June 18, 2024, the new rule would have applied had SSR 24-2p not postponed the effective date two weeks without explanation. Regardless of whether the two-week postponement was to allow adjudicators to deny more claims under the old rule, the Appeals Council was forewarned of the new effective date of the new rule, so this is not a case of innocent mere happenstance. One strains to find an explanation for the Appeals Council's decision to be issued mere days before the postponed effective date, except for the opportunity to deny this claim before the rule changed.

ECF No. 8-1 at pp. 24-25.

The Commissioner disagrees, maintaining that Plaintiff cannot overcome the presumption of impartiality afforded to the Appeals Council, since,

> [h]ere, the Appeals Council simply processed Plaintiff's request for review by applying the law in effect at the time it considered the request. The Appeals Council processes tens of thousands of requests for review each year, meaning that it likely adjudicates many requests for review every day. It cannot be faulted for continuing to process its workload prior to the effective date of a change in the regulations.

ECF No. 12-1 at p. 17 (citation omitted).

The Commissioner accurately observes that the burden on Plaintiff to establish bias by the Appeals Council is quite high and almost never established by an adverse ruling such as the one relied upon here by Plaintiff:

> The right to a trial by an impartial decisionmaker is a basic requirement of due process, *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955), and the decisionmaker must also avoid even the appearance of bias, *see Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 149–50, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). Although an adjudicator is presumed to be unbiased, *see Schweiker v. McClure*, 456 U.S. 188, 195, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982), this presumption can be rebutted by showing that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Compare Liteky v. United States*, 510 U.S. 540, 556, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (judicial disqualification). Rulings alone are almost never sufficient evidence of bias. *Id*. at 555, 114 S.Ct. 1147; *see Marozsan v. United States*, 90 F.3d 1284, 1290 (7th Cir.1996). Instead, evidence is required that the decisionmaker "had it 'in' for the party for reasons unrelated to the officer's view of the law, erroneous as that view might be." *McLaughlin v. Union Oil Co*., 869 F.2d 1039, 1047 (7th Cir.1989).

*Barthelemy v. Barnhart*, 107 F. App'x 689, 694 (7th Cir. 2004); *see also, Advoc. S. Suburban Hosp. v. N.L.R.B.*, 468 F.3d 1038, 1048 (7th Cir. 2006) ("The Constitution requires unbiased adjudicators in quasi-judicial administrative proceedings, but ALJs are presumed fair absent contrary evidence of deep-seated favoritism. *See Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *Schweiker v. McClure*, 456 U.S. 188, 195, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982).").

In keeping with these principles, the Court finds no merit to Plaintiff's argument that the Appeals Council violated due process, was biased, or gave the appearance of bias, merely by applying the law as it existed at the time, rather than applying a regulation that had not yet taken effect or waiting to issue a ruling until the new regulation took effect. Other courts have also consistently rejected the same or similar arguments. *See, e.g., Darrell E. A. v. Bisignano*, No. 24 C 4334, 2026 WL 1815682, at *3 (N.D. Ill. June 24, 2026) ("Claimant otherwise says the Court should retroactively apply SSR 24-2p on fairness

grounds. The Court, however, cannot disregard the agency's clear directive against applying regulations that were not in effect at the time of the ALJ's decision. "Social Security Ruling 24-2p is clear that when evaluating past relevant work under the regulations, courts are to apply the rules in effect at the time the ALJ's decision was issued." *Vicki A*., 2026 WL 323513, at *2–3 (*citing Velasquez-Garcia v. Holder*, 760 F.3d 571, 579 (7th Cir. 2014) for proposition that retroactivity is not generally favored in the law and concluding the Court lacks authority to substitute its judgment and apply the new regulations retroactively); *see, e.g., Nona A. v. Bisignano*, 2026 WL 1229648, at *3 (N.D. Ill. May 5, 2026) ("Plaintiff's contention that SSR 24-2p provides a basis for reversal is easily disposed of, as SSR 24-2p became effective on June 22, 2024 and was not in place at the time of the ALJ's decision (November 2023)."); *Shilts v. Comm'r of Soc. Sec*., 2025 WL 2013577, at *3–4 (N.D. Ind. July 17, 2025) (same); *Rita S. v. Dudek*, 2025 WL 1141179, at *2–3 (N.D. Ill. Apr. 16, 2025) (same). Thus, the Court declines to retroactively apply SSR 24-2p.").

Further, Plaintiff's bald assertion that it is difficult to find an explanation for why the Appeals Council would have denied her claim for review when it did, "except for the opportunity to deny this claim before the rule changed," is simply incorrect and turns the presumption of fairness on its head. Rather, as the Commissioner points out, the Appeals Council presumably addresses numerous requests for review on every workday of the year, and that the fact that it happened to deny Plaintiff's request shortly prior to the effective date of a new regulation does not, without more, suggest an intent to target Plaintiff's claim as one that would be affected by the new regulation.[9] Accordingly, this aspect of Plaintiff's

[9] Plaintiff's request for review by the Appeals Council, submitted on October 6, 2023, does not reference the

motion is denied.

Plaintiff's Remaining Claims

As noted earlier, Plaintiff also asserts that the Commissioner's decision must be reversed for the following reasons: 1) the ALJ erred by acting as his own medical expert and by selectively relying on evidence when discounting Dr. Dave's medical opinion concerning Plaintiff's neck pain and ulcerative colitis; 2) the ALJ erred by failing to include any limitations from Plaintiff's ulcerative colitis and neck pain in the RFC finding, such as, for example, failing to include a limitation that she avoid mentally-demanding and stressful work that exacerbated her symptoms; and 3) the ALJ's finding that Plaintiff could perform her past work as a medical secretary is unsupported by substantial evidence that she could perform such work on a regular and continuing basis. For reasons discussed below, the Court finds no merit to these arguments.

*ALJ Acting as Medical Expert/Selective Recitation of Evidence*

Regarding the first of these arguments, Plaintiff asserts that the ALJ committed legal error, both by "acting as his own medical expert," and by "relying on a selective recitation of the evidence," when evaluating Dr. Dave's consultative opinion suggesting limitations related to Plaintiff's neck pain and ulcerative colitis. ECF No. 8-1 at pp. 19-21.

However, the Court finds no merit to these arguments. To begin with, there is no merit to Plaintiff's claim that the ALJ relied on a selective recitation of the evidence when evaluating Dave's opinion. In this regard, Plaintiff contends that the ALJ erred "[b]y citing

new regulation, but, rather, states only that, "The hearing decision is without basis in substantial evidence in the record as a whole or a reasonable basis in law." Tr. 451.

some features of Dr. Dave's clinical findings, but ignoring that portion of Dr. Dave's opinion" in which Dave reported Plaintiff's statement to him that she "does activity in a piecemeal fashion and that it helped to use 'medications, heat and ice.'" *Id*. at 20. Plaintiff also seems to suggest that the ALJ ignored Dave's finding of muscle spasm in Plaintiff's neck, and incorrectly described Dave's findings as "essentially normal."

In fact, however, the ALJ expressly referenced the information Plaintiff claims he "ignored," ECF No. 8-1 at p. 21. For example, the ALJ stated that he was unpersuaded by Dave's opinion regarding Plaintiff's need for restrictions related to her cervical spine, in part "because they are entirely unsupported by a single complaint of neck pain" during the relevant period and "are inconsistent with the claimant's reports during the exam that her pain is abated with ice, rest, and medication." Tr. 58. The ALJ also expressly discussed Plaintiff's statement to Dave about doing things in a piecemeal fashion. Tr. 57 ("At the December 2018, consultative examination with Dr. Dave, the claimant . . . not[ed] . . . that her pain was only experienced with prolonged activities or exertion, so she breaks tasks down "piecemeal" style and uses ice as needed." Tr. 57. The ALJ also noted Dave's finding of "spasm," Tr. 57, which was a spasm in the neck muscles. Tr. 800. Accordingly, the Court finds no merit to Plaintiff's contention that the ALJ selectively recited the information in Dave's report. Nor did the ALJ mischaracterize Dave's report by stating that Dave's exam findings were "essentially normal . . . despite showing spasm." Tr. 57. Rather, the Court finds that was an accurate summary by the ALJ. Tr. 798-801.

The Court similarly finds no merit to Plaintiff's assertion that the ALJ erred by acting as his own medical expert. Plaintiff states, for example, that the ALJ improperly "discounted

Dr. Dave's opinion" by observing that it was rendered at a time when Plaintiff's ulcerative colitis flare was resolving, thereby "implying that ALJ Weir's medical judgment was that Plaintiff's ulcerative colitis had no residual effects at all." ECF No. 8-1 at p. 21. However, Plaintiff is mischaracterizing the ALJ's observation concerning the timing of Dave's opinion. In the Court's view, the ALJ was accurately referring to the fact that Dave's examination of Plaintiff took place prior to the subsequent determination by Plaintiff's gastroenterologist, later in December 2018, that Plaintiff's ulcerative colitis flare had been successfully resolved with treatment. That was a relevant observation by the ALJ, and did not involve him acting as a medical expert. Nor did such observation by the ALJ logically imply that "Plaintiff's ulcerative colitis had no residual effects at all," contrary to what Plaintiff asserts. Nevertheless, the ALJ also correctly noted that the medical evidence did not show that Plaintiff had any work-limiting residual effects from ulcerative colitis after December 2018. Nor does the Court otherwise find that the ALJ erred by "acting as his own medical expert."

*The ALJ's Alleged Failure to Include Additional Limitations in the RFC*

The Court also finds no merit to Plaintiff's argument that the ALJ erred by failing to include any limitations from Plaintiff's ulcerative colitis and neck pain in the RFC finding, such as a limitation that Plaintiff avoid mentally-demanding and stressful work that exacerbated her symptoms. In this regard, "it is the claimant's burden to prove a more restrictive RFC[,]" *Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *3 (2d Cir. Feb. 13, 2023) (citation omitted), and Plaintiff has not met that burden. That is, Plaintiff has not shown that a reasonable factfinder would have to conclude that her RFC is more restrictive than what ALJ Weir found. *See, e.g., Nicole R. T. v. Comm'r of Soc. Sec.*,

No. 5:20-CV-1015 (DEP), 2022 WL 866551, at *10 (N.D.N.Y. Mar. 23, 2022) ("[I]t was the plaintiff's burden to prove that she is disabled, and she has not pointed to evidence, other than that which was discounted to some extent by the ALJ for valid reasons, which shows that she was more significantly limited, particularly in her abilities to reach, handle, or finger with her upper left extremity, such that a reasonable person would have to conclude contrary to the ALJ's findings."), *aff'd sub nom. Tibbles v. Comm'r of Soc. Sec.*, No. 22-1127-CV, 2023 WL 3477127 (2d Cir. May 16, 2023).

*Plaintiff's Ability to Perform Past Relevant Work on a Continuing Basis*

Plaintiff also maintains that the ALJ erred in finding that she could perform her past work as a medical secretary, and, specifically, that the ALJ "mischaracterized the evidence" by "rel[ying] in part upon Plaintiff's 'significant earnings post alleged onset date' as evidence of her ability to sustain work." ECF No. 8-1 at p. 23. Plaintiff contends that such work was unskilled and performed on a part-time basis, and that she had the ability to turn down work on days that she was not feeling well, and that, consequently, such work "bore no 'rational connection' to her ability to sustain full-time work as a medical secretary." *Id*. at p. 24.

However, the Court disagrees. For example, Plaintiff contends that because she testified that she sometimes took days off from the part-time teaching job she began in the fall of 2018 due to feeling unwell, it was error for the ALJ to consider such work when making the RFC finding. However, it is evident from Plaintiff's testimony that the primary reason she felt unwell on such days was her ulcerative colitis flare, which, the ALJ found, ended in December 2018, without satisfying the duration requirement. *See*, Tr. 333 ("[THE ALJ:] Okay. And when you did the sub[stitute teacher] work after that summer [of 2018], did you

have any problems that weren't related to your bowel issues? [Plaintiff:] No. I gradually got better."); *see also, id*. at 334 ("[THE ALJ:] But what made you not have a good day? If you woke up and you said I'm not having a good day, what is the thing that was causing you to have-- [PLAINTIFF:] Probably I was having bouts of diarrhea and abdominal pain.").

Moreover, although the Plaintiff went on to testify that she felt she could never return to full-time work due to her "back and neck problem,"[10] the ALJ was not required to accept such testimony.[11] Rather, the ALJ was entitled to make an RFC finding based on the entire record, including the opinions of Drs. Miller and Krist that Plaintiff could perform even light work on a sustained basis,[12] and the medical treatment records in which Plaintiff repeatedly denied having any arthralgias or myalgias. *See, e.g.*, Tr. 57 ("Annual wellness exams in August 2018, 2019, and 2020, and again in dated [sic] 2021, are entirely devoid of complaints for spinal pain or myalgias[.]"). Plaintiff has not identified any contrary evidence from which a reasonable person would be required to find that she was unable to perform her past work as a medical secretary on a sustained basis.

In sum, the Court finds no merit to Plaintiff's arguments concerning alleged errors by the ALJ.

---

[10] Tr. 335 ("[THE PLAINTIFF:] [T]he bottom line is I'm only able to work part-time. My full-time days of working are over due to my back and my neck. I mean, once a back and neck problem, I believe you always have it.")

[11] As mentioned earlier, Plaintiff testified that she had "constant" neck pain during the entire period of alleged disability, "every time [she] tried to do anything." Tr. 317. However, the record reasonably shows that Plaintiff's neck pain was initially precipitated by heavy lifting in the school cafeteria, that it resolved when she stopped doing that type of work, and that thereafter her neck only bothered her intermittently when she did something particular to aggravate it. For example, Plaintiff reportedly told Dr. Dave that her neck pain was intermittent and caused by things such as her dog pulling on its leash or lifting heavy laundry. Tr. 798.

[12] The Court notes that there is no medical opinion of record that Plaintiff was completely unable to work during the relevant period.

CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is denied, and Defendant's cross-motion for the same relief (ECF No. 12) is granted. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
September 23, 2026

ENTER:

Charles J. Siragusa

CHARLES J. SIRAGUSA
United States District Judge